■ ISRAEL YUDA, Appellant, v REBECCA YUDA, Respondent. —In an action for a divorce and ancillary relief, the plaintiff husband appeals from an order of the Supreme Court, Rockland County (Nelson, J.), dated May 19, 1987, which, after a hearing, denied his motion to vacate an order and judgment (one paper) of the same court (Stolarik, J.), dated December 24, 1986, which was based on an oral stipulation of settlement.

Ordered that the order and judgment is reversed, on the facts, without costs or disbursements, the order and judgment is vacated, and the stipulation is declared to be null and void.

The plaintiff Israel Yuda, currently about 63 years old, and the defendant Rebecca Yuda, currently about 64 years old, were married in 1956. On November 5, 1986, the plaintiff, *pro se,* and the defendant, who was represented by counsel, entered into a stipulation of settlement in open court. This stipulation was reduced to an order and judgment. The order and judgment provided, *inter alia:*

(1) With respect to the marital premises, the plaintiff was obligated to leave the marital abode by May 31, 1987. The defendant was given exclusive occupancy of the marital premises until the sale thereof which was to be at her sole discretion. Upon the sale of the premises the plaintiff was to receive one half of the proceeds. The defendant could rent the premises and retain the rent which she received; however, the "defendant [could not] rent or sublet the entire marital abode".

(2) With respect to maintenance, after the plaintiff moved from the marital abode, he was required to pay the defendant $800 per month for life.

(3) With respect to equitable distribution, *inter alia,* the defendant was to receive 50% of the plaintiff's pension benefits when the plaintiff retired, in addition to the $800 per month payment.

The plaintiff moved to set aside the stipulation on the grounds, *inter alia,* that it was unconscionable. The Supreme Court denied the motion and this appeal ensued.

Relief from a stipulation of settlement will only be granted upon a showing of good cause sufficient to invalidate a contract *(see, Daniels v Banks,* 136 AD2d 675; *Sontag v Sontag,* 114 AD2d 892, *lv dismissed* 66 NY2d 554). Moreover, " '[s]tipulations of settlement are favored by the courts and not lightly cast aside (see *Matter of Galasso,* 35 NY2d 319, 321)' " *(Sontag v Sontag, supra,* at 893). Nevertheless, the courts will strictly scrutinize separation agreements "to see to it that they are arrived at fairly and equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity" *(Christian v Christian,* 42 NY2d 63, 72).

Actual fraud need not be shown if the agreement is manifestly unfair to a spouse because of the other party's overreaching. Thus, the courts will look at the terms of a separation agreement to see if there is an inference, or even a negative inference, of overreaching in its execution *(see, Christian v Christian, supra,* at 71-73)

An unconscionable bargain has been regarded as one " 'such as no [person] in his [or her] senses and not under delusion would make on the one hand, and as no honest and fair [person] would accept on the other' " *(Hume v United States,* 132 US 406, 411), the inequality being " ' "so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense" ' " *(Mandel v Liebman,* 303 NY 88, 94; *Christian v Christian, supra,* at 71).

Viewing the challenged stipulation in its entirety, and examining the totality of circumstances in this case, we find it was unconscionable and therefore must be set aside.

The economic provisions of the stipulation are unconscionable. The defendant is entitled to exclusive possession of the marital abode, the parties' major asset, which is to be sold only at her discretion. This provision effectively gives the defendant control over the parties' primary asset for life.

Since the defendant is not obligated to sell the marital abode, it is possible that the plaintiff may never realize any income from this property. This is particularly disturbing in light of the plaintiff's limited financial resources.

The plaintiff is also obligated to pay the defendant $800 each month without time limitation, which would leave him with little monthly income. Lastly, it is shocking that after he retires (and he is about 63 years old), the plaintiff is to pay the defendant $800 per month plus one half of his pension. On the basis of the record before us, it would appear that after retirement, the plaintiff's sole income will be his pension in the sum of $416 per month. His obligation to the defendant, pursuant to the terms of the agreement, will be approximately $1,008 per month. There is nothing in the record which would support a finding that the plaintiff has other income. This obviously inequitable arrangement, especially in view of the fact that the defendant will totally control the sale of the marital residence, leads to the inescapable conclusion that the stipulation is unconscionable.

Furthermore, the circumstances under which the stipulation was entered into lend support to our conclusion. The *pro se* plaintiff was put under some pressure by the court to settle at a time when the circumstances should have alerted the court to take a more active role in insuring that a conscionable result would be reached. Further, the defense counsel pressured the plaintiff into foregoing the possibility of seeking reimbursement for certain payments which the plaintiff had made. While such pressures were clearly not, by themselves, sufficient to warrant vacatur of the stipulation, they were improper.

We conclude that the stipulation, in its entirety, was unconscionable and must be set aside. Kunzeman, J. P., Harwood and Balletta, JJ., concur.

Eiber, J., dissents and votes to affirm the order appealed from, with the following memorandum: Because I see nothing unconscionable about the terms of the stipulation of settlement, which was knowingly and voluntarily entered into by the plaintiff herein, I am compelled to register my dissent.

As noted by my colleagues in the majority, stipulations entered into in open court, such as the one at issue, are strongly favored and may not be lightly cast aside *(see, Sontag v Sontag,* 114 AD2d 892). Thus, the rule has evolved that judicial review of such stipulations must be "exercised circumspectly, sparingly and with a persisting view to the encourage-

ment of parties settling their own differences in connection with the negotiation of property settlement provisions" *(see, Christian v Christian,* 42 NY2d 63, 71-72). While relief from a stipulation may be granted upon a showing of good cause, courts may not intervene and redesign or vacate an agreement simply because "judicial wisdom in retrospect would view one or more of the specific provisions as improvident or one-sided" *(see, Christian v Christian, supra,* at 72).

With these considerations in mind, it appears to me that there is no compelling need for judicial intervention so as to relieve the plaintiff from his legal obligations as embodied in the stipulation. We are unanimous in the conclusion that the subject stipulation was not the product of fraud, duress or overreaching. Indeed, the record is replete with instances wherein the plaintiff acknowledged that he understood the stipulation and that he intended to fulfill its terms. We are also in full agreement that any pressures which may have been brought to bear were insufficient to warrant a vacatur of the stipulation. What divides this court is the issue of whether the agreed-upon economic provisions may now be characterized as so unconscionable as to be unenforceable.

Analysis of relevant financial information is essential in determining whether the terms of the stipulation are so inequitable " ' "as to shock the conscience and confound the judgment of any [person] of common sense" ' " *(Mandel v Liebman,* 303 NY 88, 94, quoting from *Osgood v Franklin,* 2 Johns Ch 1, 23, *affd* 14 Johns 527). This information reveals that the plaintiff currently earns a net income of $1,900 per month. The defendant, on the other hand, relies, almost exclusively, upon the $800 monthly award to satisfy all of her living expenses, including the substantial costs of maintaining the marital residence, upon which she must spend approximately 50% of the entire maintenance award. The record further reveals that the plaintiff, by stipulating to the payment of an $800 monthly award of maintenance, effectively reduced the amount which he had been required to pay pursuant to a prior court order. Thus, his decision to bind himself to the support provision of the stipulation does not appear to have been an improvident one.

Equally significant is the fact that the plaintiff, through the stipulation, secured a waiver on the part of the defendant of her rights, title and interest in certain premises located in the State of Florida. The plaintiff has since sold the premises and has been able to retain the benefits afforded to him under the agreement. In this regard, it is also noteworthy that while the

defendant was granted exclusive possession and occupancy of the marital residence, the stipulation does not divest the plaintiff of his equitable interest in this property. Upon sale of the home, the plaintiff is entitled to receive an equal share of the proceeds.

Finally, comment is in order regarding the plaintiff's financial obligations upon his retirement. While I would agree with the majority that payment by the plaintiff of $800 per month plus one half of the value of his monthly pension payments may appear to be burdensome, the plaintiff, in addition to the statutory remedies available under the Domestic Relations Law, as a term of the stipulation, specifically reserved the right, within the context of the stipulation, to seek a downward modification of his financial obligations in the event he becomes unable to fulfill the terms of the stipulation. Certainly, the inclusion of such a provision, which accounts for potential hardship, serves to reinforce the conclusion that the subject stipulation is not unconscionable or the product of some other infirmity which might warrant its nullification.

In light of the foregoing, I would affirm the order denying the plaintiff's motion to vacate the order and judgment which was entered upon an agreement which he had voluntarily endorsed. This agreement did not suffer from the taint of fraud, duress or overreaching. Nor are the substantive terms so inequitable as to be deemed unconscionable. Accordingly, there is no reason to tamper with the contractual rights of the parties. The plaintiff's representations, that he intended to fulfill the terms of the stipulation, should, in my view, be enforced.