Tarangelo v Vicventures SPE LLC (2025 NY Slip Op 51336(U))

[*1]

Tarangelo v Vicventures SPE LLC

2025 NY Slip Op 51336(U)

Decided on August 27, 2025

Civil Court Of The City Of New York, Kings County

Epstein, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 27, 2025
Civil Court of the City of New York, Kings County

Danny Tarangelo, Plaintiff,

against
Vicventures SPE LLC and PAVARINI McGOVERN, Defendants.

Index No. TS 300176/11

Prior Plaintiff Counsel
Imran H. Ansari, Esq.
AIDALA BERTUNA & KAMINS, PC
546 5th Avenue, 6th Floor
New York, New York 10036
[email protected]
212-468-0011 
Plaintiff: Pro Se
Defendant Counsel
Joseph Gulino, Esq.
NICOLETTI GONSON & SPINNER, LLP
555 5th Avenue, 5th Floor New York, New York 10017
[email protected]
646-795-1740

Jill R. Epstein, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of this Motion to enforce a stipulation of settlement
Papers Numbered
Notice of Motion and Affidavits Annexed 1
Answering Affidavits
Upon the foregoing cited papers, and after oral argument held on August 12, 2025, the Decision/Order on this Motion to enforce a settlement is as follows:
Defendants, Vicventures SPE LLC and Pavarini McGovern (hereinafter "Defendants"), move, by Notice of Motion, dated January 3, 2025, to enforce an in Court, on the record, Stipulation of Settlement entered into by the parties on October 17, 2024. Plaintiff did not oppose in writing but was permitted to state his objections to the settlement on the record.
At the time the stipulation was agreed upon, Plaintiff was represented by Imran H. Ansari, Esq., of Aidala, Bertuna & Kamins, P.C. and Defendants were represented by Joseph Gulino, Esq, of Nicoletti Spinner Ryan Gulino Pinter, LLP. On that date, October 17, 2024, the parties appeared ready for jury selection. After much discussion, the matter resolved. The parties agreed that Defendants would pay Plaintiff Five Hundred Fifty Thousand ($550,000) Dollars. [Tr. October 17, 2024, p 3, lines 11-20]. Both counsel and plaintiff agreed to the settlement on the record.
Counsel for Defendant then wished to assure that Plaintiff understood that there were workers compensation liens, which would diminish the sum he would receive in hand. In response, counsel for Plaintiff was allowed to question Plaintiff on the record. The transcript of the Settlement is annexed to this decision but is excerpted below.
Mr Ansari: Let me elaborate on that, your Honor. I consulted with my client. He's aware that the settlement amount coming from the defendants is $550,000, but it's subject to certain liens. Those liens being, primarily the works comp liens....
The Plaintiff: I'm trying to understand.
Mr. Ansari: I told you about the fees, right? You know you're going to have to pay the fees to us as your attorneys.
The Plaintiff: Yes.
Mr. Ansari: And then I told you about the workers' comp. We talked about a lot about that, right? And they're going to reduce it by one-third, okay. There's the statutory one-third, but they're not, at this time, willing to reduce to any further based on the amount you're getting as a settlement, $550,000. Okay? All right?
We talked about that. Any other liens on the file that may be owed we just discussed that and factored in what you're going to be getting in your pocket. We've gone over that many a times, countless times, I would probably say at this point.
So that's what we're discussing here, and put on the record that I explained all of those [*2]things to you, and that you understand that and that you'll have to pay back the liens. You're going to have to account for the attorneys' fees and disbursements on the file.
The Plaintiff: Yes. But the, the liens were supposed to be all taken care of.
Mr. Ansari: The liens will be taken care of out of the $550,000 that you're going to be receiving as a settlement in this case, right. So we have the workers' comp lien that's going to be taken care of out of that amount of money, right? Okay.
The Plaintiff: Yeah.....
Mr. Ansari: And you may have another lien....
There was then a discussion during which it seemed as if Plaintiff wished for clarification, at which point, the Court inquired.
The Court: Sir, may I ask a question. Did you take a loan based on your having a personal injury action that you were going to —
Plaintiff: Yes.
The Court: That you expected money from.
Plaintiff: Yes.
The Court: So what counsel is referring to is that loan, ...will also be paid back from the money from this case. Okay? Do you understand?
Plaintiff: Yes.
The Court: Okay. Thank you, sir.
Mr. Ansari: Yeah. And if I may, just so it's clear, we went over the numbers many a time. And the $550,000, that's your settlement amount, right, but you're not getting that necessarily in your pocket, right, we talked about the liens, the loan, we have talked about the attorney fees, the cost and disbursements, right. And we talked about what would be taking in your pocket.
The Plaintiff: Yeah, yes....
The Court: If you get any paperwork, sir, where you have to sign it to formalize this agreement, your lawyer will make sure that it gets signed and you're going to be needed to cooperate with that. You'll have to sign a general release. You'll have to sign the [*3]settlement. Okay?
The Plaintiff: Okay.
The Court: And then in exchange for that, they will issue a check, which your lawyer will receive, and then distribute in accordance with the retainer agreement and the information you were given here today.
Mr. Ansari: And, your Honor, just for, if I may, just for the sake of a complete record?
The Court: Yes.
Mr. Ansari: As to my client's, you know, knowledge of the settlement agreement, and his agreement to this, Danny, you also talked, at length, multiple times for many hours about the risks of trial, remember? Okay..And I told you there's no guarantee, remember that?
And we talked about the strength and the weaknesses of your case at length, correct? Not only myself, including my partner at the firm, John Leventhal, my other partner, Arthur Aidala also Billy Santo, and we all talked about going forward with trial is not guaranteed, right?
And I told you, we already have a settlement offer, and we counseled you that we think it's advisable you take it, but, ultimately, you know, Danny, it's up to you, if you're going to accept it or not, right? We talked about that.
The Plaintiff: Yes.
Mr. Ansari: Okay.
Mr. Ansari: And then you told me today that you will accept the offer, correct?
The Plaintiff: Yes.
Mr. Ansari: Okay.
The Court: Okay. Just a final words [sic], we are doing this voluntarily and of your own free will?
The Plaintiff: Yes.
The Court: Okay. I'm going to ask something, not based on any observation about you, but because I ask it in every case.
Have you taken any medication today which would keep you from making a good decision in this case.
The Plaintiff: No.
The Court: Okay. That's what I wanted to know. So I want to thank you. I want to wish you the best of luck. I think this was a fair settlement offer based on the strengths and weaknesses of the case. You never know what a jury is going to do, and it's always better to take our faith [sic] into our own hands.
So I want to congratulate everyone for doing that, and I want to wish you the best of luck.
The Plaintiff: Thank you.
Unlike most two-attorney stipulations, Plaintiff was questioned in detail about his understanding. His lawyer was meticulous in creating a record showing that Plaintiff understood the settlement and agreed to it.
Thereafter, Plaintiff's attorney was discharged and Plaintiff was given sixty (60) days by the Court to obtain new counsel. Thus there was a delay in the hearing of this instant motion. Mr. Tarangelo chose not to retain new counsel and did not oppose this motion in writing. He was, however, given the opportunity to address the Court and state his objections to the settlement. Those objections appeared to be the fact that the workers' compensation liens, a personal loan, attorneys fees and costs and disbursements would be taken from the settlement amount. As can be seen from the allocution in this matter, Plaintiff was fully aware of his obligations as regard the distribution of the settlement funds. On the record, his then counsel went into detail about the discussions held on the pros and cons of settlement and what any settlement would represent. Those things were reiterated in open court.
At the time of the settlement, Plaintiff gave no indication of distress and he understood the agreement. His attorney never indicated that he questioned Plaintiff's ability to understand the settlement or otherwise felt that Plaintiff might be in need of a guardian or other assistance in order to understand and agree to the terms.
Stipulations of settlement are favored by the Courts and a stipulation made on the record in open Court will not be set aside absent a showing that it was the result of fraud, overreaching, mistake or duress. McCoy v Feinman, 99 NY2d 295, 302 [2002]; Hallock v State of New York, 64 NY2d 224, 230 [1984]; Cavalli v Cavalli, 226 AD2d 666 [2d Dept 1996]; "[S]tipulations of settlement especially those whose terms are placed upon the record in open Court are judicially favored". Davenport v Davenport 199 AD3d 637, 641- 42 [2d Dept 2021]. Where an open Court stipulation of Settlement contains all of the material terms of an enforceable agreement, it will be enforced absent a showing of grounds sufficient to invalidate a contract, such as fraud, duress, overreaching, or mistake. Premier Ford NY, Inc. v Ryan, 162 AD3d 699, 701 [2d Dept 2018].
This Court found Plaintiff to be alert, aware, competent. There was nothing put forward by either Plaintiff, his prior attorney, or Defendant's counsel, which could raise any possibility that Plaintiff was unable to understand the terms of the agreement. The Court cannot in good conscience undo an agreement that was so painstakingly done. All counsel and the Court assured that Plaintiff was competent to agree to its terms.
WHEREFORE, it is hereby
ORDERED AND ADJUDGED that the Defendant's Motion to enforce the settlement agreement is granted and the Court hereby directs that the settlement be effectuated and Defendant deemed released and the matter settled upon transmittal of the settlement check pursuant to the terms of the settlement taken on the record; and it is
ORDERED AND ADJUDGED that the settlement amount be tendered to Aidala, Bertuna & Kamins, P.C., as attorneys, within thirty (30) days and that said firm shall take such steps as may be necessary to assure that the settlement funds are disbursed pursuant to the settlement and that all relevant liens are resolved.
The foregoing constitutes the decision and order of the Court.
Dated: August 27, 2025
Brooklyn, New York
JILL R. EPSTEIN, JCC